ESTATE OF N. JEROME SCHULMAN, DECEASED, DORIS G. LEE, FORMERLY KNOWN AS DORIS G. SCHULMAN, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Schulman v. Commissioner
Docket No. 9185-76.
United States Tax Court
T.C. Memo 1978-399; 1978 Tax Ct. Memo LEXIS 116; 37 T.C.M. (CCH) 1655; T.C.M. (RIA) 78399; October 4, 1978, Filed; As Amended October 17, 1978 George Damashek and Irving E. Field, for the petitioner. Arthur H. Boelter, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in the Federal estate tax of the Estate of N. Jerome Schulman in the amount of $ 19,941. Concessions were made by petitioner. The sole issue remaining for our decision is whether the transfer by the deceased, *117 N. Jerome Schulman, of an accidental death and dismemberment insurance policy to his wife was made in contemplation of death, thus requiring the insurance proceeds to be includable in his gross estate under the provisions of section 2035. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner is the Estate of N. Jerome Schulman (hereinafter Dr. Schulman) as represented by Doris G. Lee (hereinafter petitioner), Dr. Schulman's widow and the executrix of his estate. Petitioner resided in Scarsdale, New York at the time the petition was filed in this case. Petitioner filed the Federal estate tax return for Dr. Schulman's estate with the District Director, Internal Revenue Service Center in New York, New York. During his lifetime Dr. Schulman was an obstetrical and gynecological surgeon in the City of New Rochelle, New York. Dr. Schulman made a practice of taking out numerous accidental death, accidental bodily *118 injury and dismemberment and/or hospital confinement insurance policies to provide financial security in the event an accidental injury precluded further employment as a surgeon. Apart from the policy at issue here, the petitioner's interest in each of these was as beneficiary and not as owner. Dr. Schulman also purchased six life insurance policies of which two named petitioner as owner. On October 27, 1970, Dr. Schulman applied for and received coverage in the amount of $ 150,000 under a group accident insurance policy (hereinafter the policy). Only Dr. Schulman could have applied for this policy insuring himself. The policy provided insurance in the face amount for accidental loss of both hands, both feet, sight of both eyes, one hand and one foot, one hand and one eye, one foot and one eye, or life. One half of the face amount was provided for loss of one hand, one foot, or one eye. The policy provided no cash loan value. On the application for the policy Dr. Schulman designated petitioner as the owner. Thereafter petitioner at all times was the owner and beneficiary of the policy. Dr. Schulman paid all the premiums on the policy by checks signed by him and drawn on *119 a joint account in the name of the decedent and the petitioner. The funds in the joint account belonged predominantly to Dr. Schulman. At the time of the application at the age of 66 Dr. Schulman was a vigorous individual, in good health and spirits, and actively engaged in the practice of medicine. He planned to retire from the active practice of medicine in his partnership on December 31, 1973, and thereafter to work three days a week. Dr. Schulman died by accidental drowning on July 15, 1972, at the age of 68. The cause of death was disputed by the insurance company which issued the policy. Petitioner sued to recover the policy proceeds and eventually received net proceeds of $ 114,750 in final payment of the policy, after the payment of attorney's fees of $ 20,250. OPINION The sole issue for our decision is whether the transfer of the $ 150,000 face amount accidental death and dismemberment insurance policy by Dr. Schulman to petitioner was made in contemplation of death and, therefore, includable in his gross estate pursuant to section 2035. [2] Section 2035 creates a rebuttable presumption that transfers within three years of death were made in contemplation of *120 death. The purpose behind section 2035 is "to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." . *121 A transfer is in contemplation of death if prompted by the thought of death, that is "if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death." Section 20.2035-1(c), Estate Tax Regulations. Whether a particular transfer was in contemplation of death is a factual question to be resolved in light of all the facts and circumstances. The burden is on petitioner to establish that the transfer of the policy was predominantly motivated by life-associated factors. . This burden is particularly heavy if the property transferred is insurance with no investment feature or current cash value. The transfer of such property is frequently testamentary in nature and motivated by the desire to avoid estate taxes. Compare (transfer of life insurance to trust from which beneficiaries could receive no property before settlor's death was in contemplation of death since sole motivation was to avoid estate taxes), cert. denied *122 and (transfer of term life insurance without loan or cash surrender value was in contemplation of death since transferor's motivation was to avoid probate delays and estate taxes) with (transfer of insurance policies with substantial cash value was not in contemplation of death since motivation was to give daughter immediate financial security to improve her mental and emotional state) and (transfer of life insurance policies with substantial cash value was not in contemplation of death since motivation was to put the policies beyond the reach of possible creditors). This burden is not lessened if, as here, the death benefits of the policy are payable only in the event of accidental death. Although one may not expect or anticipate a forthcoming accident, a transfer of an accidental death policy may nonetheless be in contemplation of death. As noted by the Fifth Circuit in an estate tax case arising from an accidental *123 death, , the question is not whether he expected to die, but whether the assignment of the policy was motivated by the thought that he might die. To be precise, the estate's burden was not to prove that [the decedent] expected to live or intended to live, * * * but that the assignment was dominantly motivated by that expectation of continued life. Here, however, petitioner contends that Dr. Schulman's plan in purchasing numerous accidental death and dismemberment insurance policies establishes life motives for the purchase of the policy in question. The evidence of record does support the proposition that Dr. Schulman's reason for purchasing the policy was for the life-associated motive of providing financial security in the event injury precluded further employment as a surgeon. The difficulty with petitioner's argument, as respondent points out, is that Dr. Schulman's motivation for purchasing the policy may not be equated with his motivation for transferring it to petitioner. Unfortunately for petitioner there is no evidence in this record establishing Dr. Schulman's motivation for transferring ownership *124 of the policy to her. This void in the record is not filled by petitioner's attempts to draw an analogy between the instant case and . In Kahnthe District Court did note that one of the reasons for the purchase of an accidental death and dismemberment policy may have been its life-time disability benefits. Kahn ultimately turned, however, on the fact that the young couple involved was unfamiliar with estate planning and transferred ownership in a group policy on the unquestioned advice of an insurance agent who gave them no rationale for the change. The court concluded that whatever may have been in the agent's mind when he made the suggestion was not communicated to the couple and the agent's motives could not be imputed to them. See . Here, on the other hand, there is no indication that Dr. Schulman was blindly relying on the advice of another when he transferred ownership of the policy to petitioner. The motivation apparently was his own and petitioner has presented no evidence to negate the presumption that the transfer was in contemplation of death. Under *125 these circumstances we find that petitioner has failed to meet her burden of proof. Accordingly, we hold that the net proceeds ($ 114,750) of the policy are includable in the decedent's estate under section 2035. Decision will be entered for the respondent.
Footnotes
1. Unless specified otherwise, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
2. Sec. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH (a) GENERAL RULE.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) APPLICATION OF GENERAL RULE.--If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. Section 2035 was subsequently amended to include in the gross estate of decedents all property transferred by them after December 31, 1976, within three years of their death (with some exceptions) regardless of whether the transfer was in contemplation of death. Sec. 2001(a)(5), (d)(1), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1848.↩